IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AURORA COOPERATIVE ELEVATOR COMPANY, | ) ) ) | CASE NO. 8:12-cv-230 |
| Plaintiff, | ) ) ) | AMENDED COMPLAINT AND REQUEST FOR |
| v. | ) ) | PLACE OF TRIAL |
| AVENTINE RENEWABLE ENERGY-AURORA WEST, LLC, and AVENTINE RENEWABLE ENERGY HOLDINGS, INC., | ) ) ) ) | |
| Defendants | ) ) | |

COMES NOW the plaintiff, Aurora Cooperative Elevator Company ("Aurora Co-op") and for its cause of action against the defendants, Aventine Renewable Energy-Aurora West, LLC ("Aurora West") and Aventine Renewable-Energy Holdings, Inc., ("Aventine"), states and alleges as follows:

1. Aurora Cooperative is a farmer owned corporation organized and operated under the laws of the State of Nebraska which has its principal place of business in Aurora, Hamilton County, Nebraska.

2. Aventine is a corporation organized and operated under the laws of the State of Delaware which claims to have its principal place of business in Dallas, Texas. Aventine has represented to Aurora Co-op that it is duly licensed or otherwise authorized to do business in Nebraska. Aventine does business in the State of Nebraska.

3. Aurora West is a limited liability company organized under the laws of the State of Delaware which has its principal place of business in

Aurora, Hamilton County, Nebraska. Aurora West is a wholly owned subsidiary of Aventine. Aurora West does business in the State of Nebraska.

4. On or about April 23, 2006 Aurora Co-op and Aventine entered into a letter of intent for the sale and development of real property located in Hamilton County, Nebraska legally described as follows: Lots Five (5) and Six (6), Aurora West Subdivision Replat, an addition to the City of Aurora, Hamilton County, Nebraska (the "Aurora West Facility").

5. Aurora Co-op, as seller, and Aventine, as buyer, executed an Agreement for the Purchase and Sale of Aurora Co-op Real Estate dated as of June 5, 2006, a true and correct copy of which is attached hereto as Exhibit 1 and is incorporated herein by this reference (the "Purchase Agreement"). Pursuant to the terms of the Purchase Agreement, Aventine granted to Aurora Co-op an option to repurchase the Aurora West Facility (the "Option").

6. Aventine and the Aurora Co-op executed a Memorandum of Real Estate Option dated August 1, 2006, a true and correct copy of which is attached hereto as Exhibit 2 and is incorporated herein by this reference. On August 11, 2006, the Aurora Co-op recorded the Memorandum of Real Estate Option with the County Clerk of Hamilton County, Nebraska in Miscellaneous Book 46, Page 29,

7. Aurora Co-op, Aventine and Aventine's wholly owned subsidiary, Nebraska Energy LLC ("NELLC") entered into a Master Development Agreement dated as of August 1, 2006, a true and correct copy of which is attached hereto as Exhibit 3 and is incorporated herein by this reference (the "MDA").

2

8. The MDA sets forth the parties' rights and obligations in connection with the construction and operation, by Aventine, of a new ethanol plant on the Aurora West Facility (hereinafter the "Plant") and the construction of infrastructure necessary for the construction and ongoing operation and maintenance of the Plant, including, but not limited to, grain handling facilities, railway loops, entry roads, grain conveyor systems, and other site improvements necessary to the ongoing operation of the Plant.

9. The MDA also required that Aventine and the Aurora Co-op execute and perform certain other contracts, including, a Grain Supply Agreement and an Aventine Marketing Agreement.

10. Aventine and Aurora Co-op executed a Grain Supply Agreement dated as of August 1, 2006 wherein Aventine represented to the Aurora Co-op that it "intends to construct, operate and maintain a new ethanol production facility located on the Aurora West Industrial Site" and that "once the Aventine Ethanol Plant is complete and operational, Aventine will require a continuous uninterrupted supply of yellow corn. . . ."

11. Pursuant to the Grain Supply Agreement, Aventine agreed to purchase from the Aurora Co-op "on an exclusive basis, all of the Grain which Aventine requires to operate the Aventine Ethanol Plant" thereby assuring the Aurora Co-op of a steady, constant, and local buyer of the grains and other products that Aurora Co-op markets.

12. Aventine and Aurora Co-op executed a Aventine Marketing Agreement dated as of August 1, 2006 wherein Aventine represented to the

Aurora Co-op that it "is currently in the process of developing and, following completion, will own and operate an ethanol plant located approximately one mile west of Aurora, Nebraska" and that "the Aventine Plant will produce Wet Distillers Grain with Solubles ("WDGS") and Condensed Corn Distillers Solubles ("CCDS" as co-products of its ethanol production at the Aventine Plant . . . ."

13. Pursuant to the Aventine Marketing Agreement, Aventine agreed that the Aurora Co-op would market and sell all of the WDGS and CCDS products produced by Aventine at the Plant "on an exclusive basis" within a 250 mile radius of Aurora, Nebraska, and that Aventine would pay a marketing fee to the Aurora Co-op for each ton of WDGS and CCDS sold under the Aventine Marketing Agreement.

14. Section 2.2 of the MDA provides in relevant part "Aventine shall use its commercially reasonable best efforts to obtain a permit for a 220 million gallon per year ("MGPY") facility" and that "the capacity of the Aventine Ethanol Plant as initially permitted shall in no event be less than 110 MGPY."

15. Section 2.3 of the MDA provides in relevant part that "Aventine shall have received all permits necessary to construct the Aventine Ethanol Plant with a capacity of not less than 110 MGPY, and commenced construction on the initially permitted ethanol plant on or before November 1, 2007. The Aventine Ethanol Plant, as initially permitted, and all infrastructure associated therewith shall be complete and ready for startup and operation by no later than July 1, 2009."

16. Section 10.2 of the MDA provides in relevant part that "the Aventine Ethanol Plant shall be completed and fully operational for the production of a minimum of 110 MGPY of ethanol, on or before July 1, 2009."

17. Sections 2.2, 2.3 and 10.2 of the MDA set forth the performance criteria that the Plant would, when fully constructed, be properly permitted by the Nebraska Department of Environmental Quality and that the Plant would initially produce not less than 110 million gallons of ethanol per year.

18. Aventine assigned all of its rights, but not its obligations, under the MDA to Aurora West pursuant to an Assignment and Assumption Agreement dated as of August 13, 2007, a true and correct copy of which is attached hereto as Exhibit 4 and is incorporated herein by this reference. Pursuant to the terms of the Assignment and Assumption Agreement, Aventine and Aurora West are jointly and severally liable for all of the obligations owing to the Aurora Co-op under the MDA.

19. On or about April 7, 2009 Aventine and Aurora West filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. Thereafter, defendants halted construction of the Plant.

20. On or about January 13, 2010 Aventine and Aurora West filed a Joint Plan of Reorganization in the bankruptcy case (the "Plan"). The Plan was confirmed by an Order of the Bankruptcy Court dated February 24, 2010 and became effective on March 15, 2010. Thereafter, Aventine and Aurora West emerged from bankruptcy.

21. On or about March 23, 2010 Aventine, NELLC, Aurora West, and the Aurora Co-op entered into an Agreement relating to Master Development Agreement, Grain Supply Agreements and Real Estate Option, a true and correct copy of which is attached hereto as Exhibit 5 and is incorporated herein by this reference (the "2010 Amendment").

22. Pursuant to the terms of the 2010 Amendment, the parties amended the Option to provide that Aurora had the right to repurchase the Aurora West Facility if defendants failed to diligently pursue construction of the Plant to completion on or before July 1, 2012 or the defendants failed to meet the performance criteria set forth in the MDA by July 1, 2012 (hereinafter the "Amended Option").

23. Aventine and the Aurora Co-op executed a Memorandum of Amended Real Estate Option dated March 15, 2010, a true and correct copy of which is attached hereto as Exhibit 6 and is incorporated herein by this reference. On April 1, 2010, Aurora Co-op recorded the Memorandum of Amended Real Estate Option with the County Clerk of Hamilton County, Nebraska in Miscellaneous Book 48, Page 77.

24. Aventine conveyed the Aurora West Facility to Aurora West by a Special Warranty Deed dated as of December 22, 2010 which was recorded with the County Clerk of Hamilton County, Nebraska on March 29, 2011 in Deeds Book 97, Page 226, a true and correct copy of which is attached hereto as Exhibit 7 and is incorporated herein by this reference.

25. Aventine has put Aurora Co-op on notice that the defendants do not intend to produce ethanol at the Plant. Aventine has publicly stated in filings made with the Securities and Exchange Commission that it does not believe that it is required to produce ethanol at the Aurora West Facility, notwithstanding the performance criteria set forth in the MDA (Aventine Form 10-K, year ended December 31, 2011 at p. 22). Further, Aventine's public filings also indicate that the defendants have delayed the start up of the Plant and that whether the Plant ever becomes operational is dependent upon "weather conditions, commodity prices and the availability of working capital", none of which are excused from the performance criteria set forth in the MDA (Aventine Form 10-K, year ended December 31, 2011 at p. 22). Aventine has also publically stated that it will "vigorously defend against any assertion that the Aurora Co-op has any right to repurchase the land or any improvements on the land" (Aventine Form 10-K, year ended December 31, 2011 at p. 22), thereby disavowing the Amended Option.

26. The defendants failed to diligently pursue construction of the Plant to completion by July 1, 2012.

27. The defendants failed to produce ethanol at the Aurora West Facility in accordance with the performance criteria set forth in the MDA.

28. The defendants repudiated the Amended Option and the defendants are in material breach of the 2010 Amendment.

29. On July 2, 2012 the Aurora Co-op gave written notice to the defendants that it had exercised the Amended Option, a true and correct copy

7

of which is attached hereto as Exhibit 8 and is incorporated herein by this reference.

30. Pursuant to the terms of the notice attached hereto as Exhibit 8, the Aurora Co-op requested that the defendants attend a closing to be held within thirty days to convey marketable title to the Aurora West Facility to the Aurora Co-op and at which closing the Aurora Co-op would make the initial payment due under the 2010 Amendment.

31. Notwithstanding Aurora Co-op's exercise of the Amended Option, the defendants have failed and refused to attend a closing and the defendants have failed and refused to convey marketable title to the Aurora West Facility to the Aurora Co-op. The defendants are therefore in breach of the 2010 Amendment, the Amended Option, and the contract to sell the Aurora West Facility to the Aurora Co-op.

32. The Aurora Co-op has been at all times and is now ready, willing, and able to perform Aurora Co-op's obligations under the Amended Option, the 2010 Amendment, and the contract to sell the Aurora West Facility to the Aurora Co-op that was formed upon the Aurora Co-op's exercise of the Amended Option.

WHEREFORE, the Aurora Cooperative Elevator Company prays for the following relief: (1) judgment requiring the defendants to convey the Aurora West Facility and the Plant to Aurora Co-op in accordance with the terms of the Amended Option; (2) an order enjoining the defendants from conveying or encumbering the Aurora West Facility and the Plant to anyone other than the

Aurora Co-op; (3) taxation to the defendants of the plaintiff's costs in this proceeding; and (4) such other and further relief as the Court deems just and equitable under the circumstances.

**DESIGNATION OF PLACE OF TRIAL**

Plaintiff requests trial in Lincoln, Nebraska.

                                    AURORA COOPERATIVE ELEVATOR
                                    COMPANY, Plaintiff

                                    /s/ Richard P. Garden, Jr.
                                    Richard P. Garden, Jr. - #17685
                                    Terry R. Wittler - #15584
                                    CLINE, WILLIAMS, WRIGHT,
                                    JOHNSON & OLDFATHER, L.L.P.
                                    1900 U.S. Bank Building
                                    233 South 13th Street
                                    Lincoln, Nebraska 68508
                                    Telephone: (402) 474-6900
                                    Fax: (402) 474-5393
                                    Email: rgarden@clinewilliams.com
                                                  twittler@clinewilliams.com
                                    *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

      I hereby certify that on July 16, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties who have entered an appearance in this case as follows:

William G. Dittrick wdittrick@bairdholm.com, ecf-usdistrict@bairdholm.com, kanstey@bairdholm.com

      /s/ Richard P. Garden, Jr.
      Richard P. Garden, Jr.

4829-3401-7040, v. 1