# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AURORA COOPERATIVE ELEVATOR COMPANY, | **4:12CV0230** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER** |
| AVENTINE RENEWABLE ENERGY - AURORA WEST, LLC, AVENTINE RENEWABLE ENERGY HOLDINGS, INC., | |
| Defendants. | |

The following motions are pending before me:

- Plaintiff's motion for leave to issue a subpoena to non-party Houlihan Lokey, Inc., (Filing No. 56), and

- Plaintiff's motion to compel, (Filing No. 61).

After conducting an extensive hearing on the record, the plaintiff's motions are granted in part, and denied in part as set forth below.

## FACTUAL BACKGROUND

The plaintiff, Aurora Cooperative Elevator Company, entered in to a contract with the defendants (hereinafter "Aventine") for construction of an ethanol production plant west of Aurora, Nebraska—the "Aurora West" facility. Aventine produces and markets ethanol, an alcohol principally derived from corn. (Filing No. 58-4, at CM/ECF p. 3; Filing No. 58-15, ¶ 3). As part of the contract, Aventine granted Aurora Coop an option to repurchase the Aurora West site if Aventine abandoned development of the plant or failed to pay performance penalties for not meeting development deadlines.

Aventine contracted with Kiewit Energy Company in May of 2007 to begin building the Aurora West facility. But construction was later suspended due to a downturn in the ethanol market. In February 2009, Kiewit filed mechanics liens against the Aurora West

property totaling $16,125,620.  On April 7, 2009, Aventine initiated Chapter 11 bankruptcy proceedings.  (Filing No. 58-15, at CM/ECF p. 5).  Kiewit terminated its contract with Aventine.  (Filing No. 58-4, at CM/ECF p. 5).

During the bankruptcy proceedings, Aventine engaged in negotiations to complete the Aurora West facility, and intended to recommence construction in April of 2011.  (Filing No. 58-4, at CM/ECF p. 7-8).  Houlihan Lokey, Inc. served as Aventine's financial advisor and investment banker to facilitate the sale of Aventine's assets and to locate investors.  (Filing No. 58-4, at CM/ECF p. 6).  Houlihan Lokey assessed the degree of uncompleted construction and concluded that as of January 13, 2010, significant additional construction and development was needed to complete the 110 million gallon capacity plant at the Aurora West facility.  (Filing No. 58-4, at CM/ECF p. 18).  William Hardie of Houlihan Lokey testified before the bankruptcy court on these issues.  (Filing No. 58-6, at CM/ECF p. 9).  The bankruptcy court later determined that Houlihan Lokey failed to disclose its relationships with investors such as Whitebox and Brigade, both of whom were approved as investors in Aventine's assets during the course of the bankruptcy proceeding.  (Filing No. 58-10).

Aventine emerged from bankruptcy on March 15, 2010.  (Filing No. 58-7, at CM/ECF p. 4).  By then, Aventine owed Aurora Cooperative more than $2 million in performance penalties under the parties' Master Development Agreement.  (Filing No. 58-15, at CM/ECF p. 8).  On March 23, 2010, the parties modified the MDA to include an Amended Option to repurchase.  (Filing No. 58-15, ¶ 9).  Under the terms of that Amended Option, Aurora Coop was granted the right to repurchase the Aurora West site for $16,500 per acre (the purchase price), subject to certain offsets, if Aventine breached the construction contract.  The deadline for completing the contract was July 1, 2012.

During the first nine months of 2010, Aventine spent approximately $71.2 million on capital projects, including $50.6 million on the Mount Vernon, Indiana and Aurora, Nebraska ethanol plants, and $18.6 million to acquire a facility near Canton, Illinois.  Aventine anticipated spending approximately $11 million more to complete the Mount Vernon,

Indiana and Aurora, Nebraska facilities. (Filing No. 58-7, at CM/ECF p. 6; Filing No. 58-12, at CM/ECF p. 4). By November 2010, the Mount Vernon plant was producing ethanol, and as of December 2010, it was functioning at 55% capacity. (Filing No. 58-17, at CM/ECF p. 3).

During the first half of 2011, Aventine continued to focus its efforts on the plant in Mount Vernon and allegedly removed equipment from the Aurora West location for use at the Mount Vernon plant. (Filing No. 58-15, ¶¶ 12-15). The Mount Vernon plant's production continued to increase during 2011. (Filing No. 58-18). As of July 2011, Aventine's "operational focus [was] to implement identified changes to bring the Mount Vernon plant closer to full capacity." Aventine reasoned that resolving new plant production issues at Mount Vernon would help Aventine move forward with the start-up of the Aurora West facility, "an identical twin of the Mount Vernon" plant. (Filing No. 58-21). See also, Filing No. 58-16, at CM/ECF p. 2.

Aurora Coop's complaint alleges Aventine breached the MDA. Aurora Coop seeks a judgment "requiring the defendants to convey the Aurora West Facility and the Plant to Aurora Co-op in accordance with the terms of the Amended Option." (Filing No. 13, at CM/ECF p. 8). As determined by Judge Gerrard, the issue to be litigated is whether Aventine failed to diligently pursue construction of the Aurora West Facility and complete construction of a facility capable of producing a minimum of 110 million gallons of ethanol per year by July 1, 2012. (Filing No. 44, at CM/ECF p. 13-17).

> Either the plant was complete by July 1, 2012—that is, capable of producing 110 million gallons of ethanol per year—or it was not. Aventine can assert whatever it wants, but if that assertion does not match the evidence, Aventine will have breached the parties' agreement.

(Id. at 14.)

There is no direct evidence of the facility's production capability as of July 1, 2012. Based on the filings of record, neither party operated the facility at maximum capacity on or before July 1, 2012 to test its production capacity and its ability to sustain that level over a period of time. Absent reliable direct evidence, the parties must rely on circumstantial

evidence as interpreted by lay and expert testimony to prove the facility's production capacity as of July 1, 2012. Both parties are entitled to discover facts which are relevant, or could lead to the discovery of relevant information, on that issue.

Motion to Compel
(Filing No. 61)

With few exceptions, the parties were unable to resolve their discovery dispute as to every interrogatory and request for production served by the plaintiff. After conducting a hearing and discussing the issues before the court, the parties agreed and/or the court ruled on the discovery as follows:

INTERROGATORY NO. 1: Identify every individual, entity or group that is likely to possess documents related to your development of the real property located in Hamilton County, Nebraska, legally described as follows: Lots Five (5) and Six (6), Aurora West Subdivision Replat, an addition to the City of Aurora, Hamilton County, Nebraska (hereinafter, the "Aurora West Site") or the construction, operation, or valuation of the ethanol plant Aventine was required to site, design, construct, and equip pursuant to Article II of the Master Development Agreement dated August 1, 2006 (the "Aurora West Ethanol Plant").

Ruling: The defendants' objections are sustained, in part. To the extent this interrogatory addresses construction, the defendants will produce responsive documents for the time period beginning on March 15, 2010, and the plaintiff will rely of the information within those documents, and the information provided in response to interrogatories 3 and 4 as responsive to interrogatory 1. As to the issue of construction, the March 15, 2010 date limitation does not foreclose the plaintiff from later obtaining responsive information regarding any issue with the Aurora West Plant that pre-existed but remained unresolved when Aventine emerged from bankruptcy and which may have impacted the plant's production capability as of July 1, 2012, or may have any bearing on defendants' alleged failure to diligently pursue construction after emerging from bankruptcy.

INTERROGATORY NO. 2: Identify every individual, entity, or group whose files were searched in response to Aurora Cooperative's requests for production in this case, identifying by Bates number all documents that were actually produced from the files of each such individual, entity, or group.

Ruling: Defendants' objections are overruled. The defendants shall answer this interrogatory. The court specifically finds that identifying the source of the documents produced is relevant and important in moving this case forward and engaging in orderly discovery, including deposition discovery.

INTERROGATORY NO. 3: Identify every one of your employees or former employees who was responsible for, supervised, or otherwise participated in the construction, permitting, operation, valuation, or attempted sale of the Aurora West Site or the Aurora West Ethanol Plant, together with the subjects of all information each such employee or former employee has concerning the Aurora West Ethanol Plant.

Ruling: The defendants' objections are sustained, in part. The defendants shall identify the supervisors or persons responsible for overseeing the construction, permitting, operation, valuation, and attempted sale of the Aurora West Plant. To the extent this interrogatory addresses construction, the defendants will respond for the time period beginning on March 15, 2010. This date limitation does not foreclose the plaintiff from later obtaining responsive information regarding any issue with the Aurora West Plant that pre-existed but remained unresolved when Aventine emerged from bankruptcy and which may have impacted the plant's production capability as of July 1, 2012, or may have any bearing on defendants' alleged failure to diligently pursue construction after emerging from bankruptcy.

INTERROGATORY NO. 4: Identify every third party (including but not limited to contractors, consultants, accountants, auditors, attorneys, or business brokers) that has performed any type of work or provided any service for the benefit of you related in any way to the construction, permitting, operation, valuation, or attempted sale of the Aurora West Site or the Aurora West Ethanol Plant.

Ruling: The defendants' objections are sustained, in part as follows:

1) The defendants shall identify any third parties who provided assistance or expertise to the supervisors or persons responsible for overseeing permitting and the operation of the plant in 2012.

2) The defendants shall identify any third parties who provided assistance or expertise to the supervisors or persons responsible for overseeing any valuation and attempted sale of the plant from and after April 7, 2009, the date Aventine filed bankruptcy proceedings.

3) To the extent this interrogatory addresses construction, the defendants will provide responsive documents for the time period beginning on March 15, 2010, and the plaintiff will rely of the names disclosed in those documents.

This date limitation does not foreclose the plaintiff from later obtaining responsive information regarding any issue with the Aurora West Plant that pre-existed but remained unresolved when Aventine emerged from bankruptcy and which may have impacted the plant's production capability as of July 2012, or may have any bearing on defendants' alleged failure to diligently pursue construction after emerging from bankruptcy.

<u>INTERROGATORY NO. 5</u>:  Identify every actual or potential source of funding (including but not limited to lenders, investors, investment banks, and private equity funds) that you have approached regarding funding for the construction, permitting, operation, or attempted sale of the Aurora West Site or the Aurora West Ethanol Plant.

Ruling:  The defendant's objections are sustained, in part. For the time frame beginning with the defendants' bankruptcy filing until July 1, 2012, as to both actual and prospective funding sources Aventine approached regarding funding for the construction, permitting, operation, or attempted sale, the defendants shall respond to this interrogatory.

<u>INTERROGATORY NO. 6</u>:  Describe in detail all issues, problems, considerations, defects and other occurrences which delayed the construction, permitting, or operation of the Aurora West Ethanol Plant and all efforts you contend you undertook to overcome them.

Ruling:  The defendants' objections are sustained, in part.  The defendants' response will be limited to the described information dated after Aventine emerged from bankruptcy on March 15, 2010, subject to further discovery regarding any problems with construction that were identified prior to Aventine's bankruptcy, which were never resolved or were not resolved until after the bankruptcy proceedings.  A "delay" shall be interpreted to mean that a project or task was not or could not be completed in the time anticipated at the outset of starting that project or task.

<u>INTERROGATORY NO. 7</u>:  Identify every person who participated in the preparation of your responses to Aurora Cooperative's Interrogatories in this case.

Ruling:  Defendants' objections are overruled.  The defendants shall answer this interrogatory by identifying not only who collected information to answer the interrogatories, but also the people who were sources of that information and the topic or topics each such source addressed.

<u>REQUEST NO. 1</u>:  All documents and tangible things that you may use to support your claims or defenses in this case.

Ruling:  With the exception of emails, the defendants have produced these documents and acknowledges its ongoing responsibility to supplement its responses.  Email discovery will be produced on or before December 31, 2013.

REQUEST NO. 2:  All agreements between you and Kiewit relating to the Aurora West Ethanol Plant.

REQUEST NO. 3:  All agreements between Kiewit and any of its subcontractors, including but not limited to Delta-T Corporation, relating to the Aurora West Ethanol Plant.

REQUEST NO. 4:  All letters, emails, reports, drawings, diagrams, plans, computer models, notes, journals, meeting minutes, and schedules (including but not limited to drafts or preliminary versions thereof) that you provided to, received from, or reviewed with Kiewit or any of its subcontractors, including but not limited to Delta-T, relating to the Aurora West Ethanol Plant.

REQUEST NO. 5:  All agreements between you and Fagen relating to the Aurora West Ethanol Plant.

REQUEST NO. 6:  All agreements between Fagen and any of its subcontractors, including but not limited to ICM, Inc., relating to the Aurora West Ethanol Plant.

REQUEST NO. 7:  All letters, emails, reports, drawings, diagrams, plans, computer models, notes, journals, meeting minutes, and schedules (including but not limited to drafts or preliminary versions thereof) that you provided to, received from, or reviewed with Fagen or any of its subcontractors, including but not limited to ICM, Inc., relating to the Aurora West Ethanol Plant.

Ruling:  As to Requests 2 through 7, the defendants have produced a portion of these documents.  After discussing the merits of the requests and the defendants' objections, the parties represent and believe that after further good faith discussions, they will be able to agree on the scope of production for responding to these requests. The court expects the parties to do so, and to the extent they can, to more specifically identify any construction issues that may have impacted the Aurora West Plant's production capacity and any issue of whether the defendants did, or did not, diligently pursue construction, with further in-depth document production targeted on those identified issues or potential issues.

REQUEST NO. 8:  All documents you provided to, received from, or reviewed with the Nebraska Department of Environmental Quality relating to the Aurora West Ethanol Plant.

Ruling: The defendants have produced the permits. The request was has been resolved by the parties.

REQUEST NO. 9: All invoices, work orders, shipping orders, bills of lading, notes, memoranda, and other documents reflecting the removal of equipment from the Aurora West Ethanol Plant prior to July 1, 2012.

Ruling: The defendants have produced a document explaining the items that were removed from the Aurora West Ethanol Plant prior to July 1, 2012, and the removal dates. The defendants will identify this document by Bates number. With that explanation and the plaintiff's agreement, this request was has been resolved by the parties.

REQUEST NO. 10: All reports, memorandums, plans, designs, diagrams, drawings, presentations, and computer models you prepared, reviewed, or otherwise relied upon in anticipation of operating the Aurora West Ethanol Plant.

Ruling: The defendants' objections are granted, in part. The plaintiff is requesting operational documents indicating whether and what Aventine considered, or any concerns it had, about starting up the plant, maintaining its operation, and complying with the terms of the parties' post-bankruptcy contract, and any measures or plans contemplated, completed, or rejected by the defendants to meet the timeline and terms of that contract. The defendants shall produce all such documents, and to the extent those documents may currently be in an electronic format, the parties shall work together to generate search terms for identifying and producing responsive documents.

REQUEST NO. 11: All documents reflecting predictions or doubts about the rate at which the Aurora West Ethanol Plant is (or was) actually capable of producing ethanol, either before or after you operated the Aurora West Ethanol Plant in June, 2012.

Ruling: To date, defense counsel's document review has not uncovered any responsive documents. The defendants shall produce all such documents, and to the extent those documents may currently be in an electronic format, the parties shall work together to generate search terms for identifying and producing responsive documents for the time period from March 15, 2010 until July 1, 2012.

REQUEST NO. 12: All records you generated in the course of operating the Aurora West Ethanol Plant, including but not limited to such records generated or maintained by the plant's distributed control system, or any similar system.

Ruling: The parties resolved their dispute regarding this request.

<u>REQUEST NO. 13</u>:  Records sufficient to show the amount of corn ground during your operation of the Aurora West Ethanol Plant.

Ruling:  The parties resolved their dispute regarding this request.

<u>REQUEST NO. 14</u>:  Records sufficient to show the quantity of the alcohol produced during your operation of the Aurora West Ethanol Plant, as well as all results of tests performed on that alcohol.

Ruling:  The parties resolved their dispute regarding this request.

<u>REQUEST NO. 15</u>:  Records sufficient to show the disposition of all alcohol generated by the Aurora West Ethanol Plant and the disposition of all byproducts of the process of producing alcohol at the Aurora West Ethanol Plant.

Ruling:  The defendants' objections are sustained, in part.  Defendants shall respond by producing any documents relating to the disposition of alcohol generated by the plant and either transferred to a third-party for immediate use but rejected by the buyer as needing further refining, or transferred to a third party needing, or for the purpose of obtaining, further refining.

<u>REQUEST NO. 16</u>:  All records reflecting materials that were emitted into the air or discharged into water treatment facilities or water tributaries as a result of your operation of the Aurora West Ethanol Plant.

Ruling:  To the extent not already produced, the defendants shall produce any emission records for the time frame during which the Aurora West Ethanol Plant was operated.

<u>REQUEST NO. 17</u>:  All agreements between you and any third party pursuant to which you undertook responsibility to site, design, construct, or equip the Mount Vernon Ethanol Plant.

Ruling:  Defendants have stated the Mount Vernon Plant is an identical twin of the Aurora West Plant.  The Mount Vernon and Aurora West Plant construction was underway during the same time frame.  The plaintiff claims the defendants prioritized and actively pursued the Mount Vernon Plant construction to the detriment of timely completing the Aurora West Plant, and the defendants have asserted it was not economically feasible to complete and operate the Aurora West Plant.  For those reasons, the primary contract with the third party cooperative or entity in Indiana for construction of the Mount Vernon Ethanol Plant may contain relevant information.  Defendants shall produce the contract as an "Attorneys' Eyes Only" document, with

its dissemination prohibited in accordance with the Protective Order entered in this case. Any future disputes regarding any further dissemination or redaction of that documents(s) shall be promptly addressed to the court.

REQUEST NO. 18: All agreements between you and Kiewit, or between Kiewit and its subcontractors, relating to the Mount Vernon Ethanol Plant.

Ruling: Defendants shall produce the contracts between Aventine and Kiewit for construction of the Mount Vernon plant. If the defendants have ready access to the Kiewit subcontracts for that plant, those subcontracts shall be produced as well. If not, the plaintiff may pursue obtaining the subcontracts by third party subpoena.

REQUEST NO. 19: All agreements between you and Fagen, or between Fagen and its subcontractors, relating to the Mount Vernon Ethanol Plant.

Ruling: Defendants shall produce the contracts between Aventine and Fagan for construction of the Mount Vernon plant. If the defendants have ready access to the Fagan subcontracts for that plant, those subcontracts shall be produced as well. If not, the plaintiff may pursue obtaining the subcontracts by third party subpoena

REQUEST NO. 20: Documents sufficient to show all equipment removed from the Aurora West Ethanol Plant that was installed at the Mount Vernon Ethanol Plant.

Ruling: The defendants have produced a document explaining the items that were removed from the Aurora West Ethanol Plant and the dates of removal. The defendants will identify that document by Bates number. With that explanation and the plaintiff's agreement, this request was has been resolved by the parties.

REQUEST NO. 21: Documents sufficient to show the rate at which ethanol has been produced at the Mount Vernon Ethanol Plant from December 1, 2010 to the present.

Ruling: Defendants will investigate whether responsive information exists in a feasible format for production. The parties will thereafter discuss in good faith the best way to approach disclosure of the information. Unless otherwise agreed to by the defendants, the responsive documents will be designated for "Attorneys' Eyes Only" and shall be guarded from dissemination in accordance with the Protective Order entered in this case.

REQUEST NO. 22: All agendas, resolutions, and minutes of your corporate meetings (whether of your board of directors, a committee or sub-committee of your board of directors, or a committee or sub-committee of your management) that refer or relate to Aurora Cooperative, the Aurora West Site, or the Aurora West Ethanol Plant.

Ruling: For the time period beginning after July of 2009, Defendants shall produce documents in this category which reference the construction, permitting, operation (including available grain supply), valuation, and Aventine's contractual obligation to Aurora Coop to the extent the contracts were discussed in the context of whether operating the Aurora West Ethanol Plant can or would be profitable. Defendants shall also search for any agendas, resolutions, and minutes of corporate meetings which discuss the potential sale of the Aurora West Plant and, if responsive documents are found, Defendants' counsel shall contact Plaintiff's counsel to discuss the production of those documents. If such documents exist, and the parties' cannot resolve their dispute over production (whether pursuant to the protective order, as redacted documents, or both), the parties shall promptly bring the matter to the court's attention.

REQUEST NO. 23: All reports you made to the federal or state regulatory agencies (including but not limited to reports filed with the Securities Exchange Commission) that refer or relate to Aurora Cooperative, the Aurora West Site, or the Aurora West Ethanol Plant.

Ruling: The defendant's objections are sustained, in part. The defendants shall produce responsive documents for the time period beginning on April 7, 2009, when Aventine filed bankruptcy proceedings.

REQUEST NO. 24: All pro forma financial statements, business plans, budgets, estimates of production, estimates of capacity, and estimates of revenue for the Aurora West Ethanol Plant.

Ruling: The defendants shall produce responsive documents to the extent those documents address or refer to the actual, estimated, or projected ethanol capacity and production of the Aurora West Plant, and the actual, estimated, or projected revenue and profit from operating the Aurora West Plant.

REQUEST NO. 25: Documents sufficient to show the identity of every one of your employees or contractors who worked at the Aurora West Ethanol Plant in June, 2012, together with the dates and times they worked there.

Ruling: The defendants' objections are sustained, in part. Defendants shall produce documents in its possession or control sufficient to identify the individuals responsible for the operation of the plant in June of 2012, whether employed by Aventine or by a third-party contractor.

REQUEST NO. 26: All documents you have sent to or received from any prospective buyer of the Aurora West Site or the Aurora West Ethanol Plant or any business broker

with whom you have been in contact with regard to the marketing or sale of the Aurora West Site or the Aurora West Ethanol Plant.

> Ruling: Defendants shall respond to this request to the extent the documents requested address the defendants' valuation of the Aurora West Plant and its actual, estimated, or projected operational capacity, profitability, and revenue. If upon review of those documents, the defendants discover disclosure may violate the confidentiality of potentially interested third party buyers, the documents shall be designated "Attorney Eyes Only;" the parties shall discuss whether further discovery from the confidential third parties is necessary and, if so, the manner of conducting that discovery; and any remaining dispute after those discussions shall be presented to the court before the plaintiff contacts any confidential third party.

REQUEST NO. 27: All documents referring to the Aurora West Ethanol Plant that you provided to or received from your lenders or prospective lenders.

> Ruling: For the time frame beginning on April 7, 2009, when the defendants filed for bankruptcy, until July 1, 2012, as to both lenders and prospective lenders, the defendants shall respond to this request to the extent the documents requested address the defendants' valuation of the Aurora West Plant, its actual, estimated, or projected operational capacity, profitability, and revenue, and Aventine's contractual obligation to the plaintiff regarding the Aurora West Plant. The documents shall be designated "Attorney Eyes Only."

REQUEST NO. 28: All documents referring to the Aurora West Ethanol Plant that you provided to your shareholders or prospective shareholders.

> Ruling: For the time frame beginning with the defendants' bankruptcy filing on April 7, 2009, until July 1, 2012, the defendants shall respond to this request to the extent the documents address the defendants' valuation of the Aurora West Plant, its actual, estimated, or projected operational capacity, profitability, and revenue, and Aventine's contractual obligation to the plaintiff regarding the Aurora West Plant. The documents shall be designated "Attorney Eyes Only."

REQUEST NO. 29: All press releases you have issued and all news articles or other media coverage you have collected relating to the Aurora West Ethanol Plant or the Mount Vernon Ethanol Plant, together with all records of interviews or statements relating to the Aurora West Ethanol Plant or the Mount Vernon Ethanol Plant that were given to the press by any of your employees or contractors.

> Ruling: The defendants' objections are denied. The defendants shall produce the requested documents to the extent they can locate them.

The parties have agreed that as to all topics listed in the Houlihan Lokey proposed deposition notice, the requests are limited to documents generated after the date when Aventine's bankruptcy was initiated, April 7, 2009, until July 1, 2012. The parties agree that if the documents Houlihan Lokey possesses have already been produced by the defendants, the defendants need not produce them again. And as to all document categories other than subsections (a), (b), (c), (n), and (o), the parties have resolved their disputes without court intervention.

As to subsections (a), (b), and (c), wherein the plaintiff requests Aventine's five-year business plan (or any other business plan); projections of future financial performance of Aventine, including potential sources and uses of cash; and Aventine's plans for operating its business after emerging from bankruptcy, the requests shall be limited to documents referring or relating to:

1) The construction, permitting, operation, valuation, or attempted sale of the Aurora West Ethanol Plant;

2) Any amount reserved, allocated, or set aside for the construction, permitting, and operation of the Aurora West Ethanol Plant; and

3) Any diversion of funds from those budgeted or allocated reserve or set aside monies for uses or expenditures other than constructing, permitting, and operating the Aurora West Ethanol Plant.

All documents produced as responsive to subsections (a), (b), and (c) shall be designated "Attorneys' Eyes Only."

Subsection (n) relating to Aventine's losses during commodities or securities trading shall be limited to any speculative commodities trading or speculative securities trading using money originally budgeted or allocated (reserved or "set aside") for the construction, permitting, and operation of the Aurora West Plant.

As to subsection (o), relating to the resignation of Tom Manuel, this request is limited to documents which relate or refer to the potential loss of funds budgeted or allocated (reserved or "set aside") for the construction, permitting, and operation of the Aurora West Plant, or Mr. Manuel's failure to adequately supervise the project to ensure the construction of the Aurora West Plant was diligently pursued.

Accordingly,

IT IS ORDERED:

1)      Plaintiff's motion for leave to issue a subpoena to non-party Houlihan Lokey, Inc., (Filing No. 56), and  motion to compel, (Filing No. 61), are granted in part, and denied in part as set forth above.

2)      The parties are advised that the court has diligently attempted to memorialize the parties' agreements and the court's orders as discussed during the hearing.  If this order appears to deviate from those discussions and rulings, the parties shall review the recording, (Filing No. 90),  for further clarification.


December 15, 2013.


                                        BY THE COURT:

                                        _s/ Cheryl R. Zwart_
                                        United States Magistrate Judge


*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.